<hr />

(No. 88-CC-0374— ▮▮▮▮▮)

JAMES SCHRUP, SR., Claimant, *v.* SOUTHERN ILLINOIS UNIVERSITY, Respondent.

*Opinion filed June 22, 1990.*

METNICK & BAREWIN (ROBERT BAREWIN, of counsel), for Claimant.

SOUTHERN ILLINOIS UNIVERSITY LEGAL CLINIC (SHARI RHODE, of counsel), for Respondent.

BURKE, J.

Claimant's complaint arose from an incident on August 16, 1985. On that date Claimant pushed on a window causing it to shatter in an attempt to exit what he believed to be a door located in Schneider Hall on the campus of Southern Illinois University.

The case proceeded to trial on January 25, 1989. The evidence consisted of testimony, documents and photographs. Both parties have filed briefs. A motion for directed finding was made by Respondent at the close of Claimant's evidence and was taken with the case. Respondent's motion for directed finding is denied.

At the time of the incident in question, Claimant, James Schrup, Sr., was a 55-year-old stockbroker who

drove his son to school at Southern Illinois University from Rock Island, Illinois. Claimant's son was a student at the University residing at Schneider Hall. The Claimant was in Schneider Hall approximately one year prior to the occurrence, but entered through another entrance. On the day of the occurrence, Claimant's son went into Schneider Hall to obtain a key and room assignment. After waiting some time, Claimant entered the residence hall to locate his son. He took the elevator to the fifth floor, found his son and decided to unload the car. Claimant followed his son through a steel door and down a stairwell because a long queue was at the elevator. His son walked a distance ahead of him.

Claimant went down to the first floor and observed a steel door. He opened the door and saw what he believed to be a door exiting outside. However, the door was actually a window. There were no signs on the window. He saw an exit sign, a bar across the window that he perceived to be a door handle and stairs which he thought led away from the door. Claimant pushed hard with his left hand on what he believed was a door and the glass shattered causing a loud noise. Claimant fell to the ground on his back. He was taken to Carbondale Hospital by ambulance. Claimant sustained cuts on his forehead and left hand. He received stitches in his left index and ring fingers and was given a splint for his fingers which were heavily bandaged. He spent the night at a motel and the next morning drove one-handed 360 miles home. Upon returning home, Claimant had swelling in his hand and severe pain. He went to the Moline Public Hospital because of pain and new bleeding. He was treated and released. Claimant also took pain pills.

At the time of the hearing, a 1½-inch scar existed

from the first joint of the ring finger to the back of Claimant's hand and there was also a ½-inch scar on the bottom of his index finger. The injury to his forehead was treated by a flapper band-aid and left no scar.

Claimant seeks damages of $10,000 for pain, suffering and lost wages. At the time of the accident, he was a stockbroker, and worked five days a week, nine to five on straight commission. He received a percentage of each sales charge which varied on each sale. Claimant earned his income by calling clients to solicit purchases of stocks, bonds and other investments. In 90% of his sales, he would initiate the call and recommend the purchase. He called 40 to 60 people a day. His gross commissions were approximately $4,300 less in August of 1985 than July of 1985. Of the $4,300, he would receive 40% to 42% commissions. His income for September 1985 was $5,000 more than August 1985.

After the August 1985 incident, Claimant did not go into the office as he had previously done. He worked only 1½ hours per day. It was difficult to work because of pain and he was unable to work the phone or quote machine with his left hand. The pain lasted two weeks as did his loss of work time. Claimant's lost wages were approximately $860. Claimant testified that his hand was no longer painful, but was a little tight when he bends his finger.

Claimant admitted than an 18-inch radiator or convection grate was in front of the window that he walked through, but did not remember seeing it at the time of the incident. The Claimant's son corroborated Claimant's testimony as to the occurrence.

The son further stated that on the ground floor of the stairwell there is a heavy metal fire door leading

outside; however, the door his father opened led into an inside hallway. The exit to the outside is down the hall and away from the window Claimant attempted to walk through and is located in the center of the building. The sidewalk that is visible through the window actually leads to the fire door. Claimant's son recalled the convection or radiator cover in front of the window in question as being in place prior to the incident. The grate of the radiator went across the entire window and was about 10 inches off the ground.

Donald M. Ballestro, assistant director of housing at SIU since 1965, testified to the following:

1. That Schneider Hall was opened in 1968.

2. The heating cover in front of the window in question was 11 inches in width and seven to nine inches off the floor and went wall-to-wall.

3. The original window in question had an aluminum bar several inches wide that ran the width of the window.

4. Since Schneider Hall has been in existence, he was never made aware of anyone walking through or into a window as Claimant.

5. He never heard of anyone walking through similar windows in similar halls at SIU.

6. That he would be advised of such an occurrence. Small windows in residence halls could have been broken without his knowledge, but he would have been advised of major breakage.

7. The exit sign by the door had no direction arrows.

The State is not an insurer against accidents oc-

curring to invitees. The State has a duty to exercise reasonable care to invitees. (*Lyons v. State* (1987), 39 Ill. Ct. Cl. 192.) The State has an obligation to use reasonable care and caution to keep its premises reasonably safe for the use of invitees, but such persons assume the normal, obvious or ordinary risks attendant on the use of the premises. (*Thornburg v. Northern Illinois University* (1986), 39 Ill. Ct. Cl. 139.) The State's duty extends to invitees to use reasonable and ordinary care against known or foreseeable damages. *Stewart v. State* (1985), 38 Ill. Ct. Cl. 200.

To show negligence, the Claimant must prove that the State was negligent in its maintenance of the building, in that it had actual or constructive notice of a dangerous condition. (*Samuelson v. State* (1986), 38 Ill. Ct. Cl. 257; *Noonen v. State* (1983), 36 Ill. Ct. Cl. 200; *Nolan v. State* (1983), 36 Ill. Ct. Cl. 194.) Claimant has failed to show a dangerous condition of which the State had knowledge or should have had knowledge. Illinois law has consistently held that the State is not liable unless it has actual or constructive notice of the defect that caused the injury. (*Sewell v. Southern Illinois University* (1979), 32 Ill. Ct. Cl. 430.) In the instant case, there is no evidence that the State had actual or constructive knowledge or notice that the window could appear to be a door to Claimant and such window would be pushed hard, shatter and injure him. (*Crile v. State* (1984), 36 Ill. Ct. Cl. 176.) Claimant failed to establish a *prima facie* case of negligence. Claimant did not prove that the State was negligent, and had actual or constructive notice of a defective condition. Claimant's claim is denied.