(No. 95-CC-1743– )

ANN NAUGHTON, Claimant, *v.* THE STATE OF ILLINOIS *et al.,* Respondent.

*Order filed December 9, 1998.*

BARRY STEWART SILVER, for Claimant.

JIM RYAN, Attorney General (SEBASTIAN N. DANZIGER, Assistant Attorney General, of counsel), for Respondent.

## ORDER

MITCHELL, J.

This matter comes to be heard on the claim of Ann Naughton (hereinafter "Naughton") for personal injuries sustained due to the alleged negligence of the State of Illinois by and through its agents and employees at the Secretary of State Driver's License Facility located on North Elston Avenue in Chicago, Illinois. Claimant seeks compensation of injuries sustained in a slip-and-fall accident that occurred on January 27, 1994, on the sidewalk outside the aforementioned facility.

To determine whether Naughton should succeed in her claim and be awarded compensation for her injuries,

two separate issues must be determined prior to any calculation of damages; (1) whether the State of Illinois owed Naughton a duty and (2) whether said duty was breached in a manner which proximately caused her injuries. The Claimant bears the burden of establishing the existence of a duty, a breach of that duty and an injury that was proximately caused by the breach. *Thornburg v. State* (1986), 39 Ill. Ct. Cl. 139.

For the purposes of this report, the following information contained in the report of proceedings and the exhibits stipulated to therein will be considered.

On January 27, 1994, at approximately 4:00 p.m., the Claimant arrived at the Secretary of State's facility located on Elston Avenue intending to renew her Illinois driver's license. Prior to the Claimant entering the facility, the weather conditions were "cold, below freezing with sleet and rain mixed with snow." After parking her car in the parking lot provided, the Claimant proceeded into the facility. Claimant experienced no difficulty walking from her parked car to the entrance of the facility due to the weather conditions or the condition of the parking lot. By the time the Claimant exited the facility, it was approximately 5:00 p.m. and it was significantly darker. In addition, the weather had worsened with an undetermined amount of snow, ice and/or rain accumulated on the ground.

Claimant exited the facility through a different doorway than she had entered and said doorway had a stairway leading to the sidewalk. As Claimant exited and began descending the steps, she noticed a Secretary of State employee entering the door with a half-full bucket containing salt. She also noticed that the stairs were icy, but spread with salt which had broken up most of the ice. Notwithstanding the condition of the stairway, she proceeded

down the stairs carefully and with the assistance of the banister provided.

Claimant turned north at the bottom of the stairway to walk along the sidewalk to the area where she had parked her car. As she did so, she testified that she noticed the following: (1) the sidewalk was sloped toward the parking lot; (2) the weather conditions were icy and very cold; (3) the area in which she intended to walk was very dark; (4) there was less salt on the ground as she proceeded to walk away from the stairs. The Claimant proceeded to walk on the sidewalk towards her parked car and thereupon, slipped, tripped and fell. She stated that "ice" caused her to fall, without further description.

Claimant was taken by ambulance to Resurrection Hospital and treated for a fractured shoulder. Claimant had no surgery, but did receive extensive physical therapy. Her medical bills related to this occurrence total $2,390. Claimant also asserts lost wages in the amount of $9,862, due to time missed from her two jobs in endeavoring to recover from her injuries. In addition, Claimant alleges that her shoulder's range of motion has diminished due to the injury and that its lack of strength has affected her ability to perform at work.

As stated earlier, the existence of a duty is critical to any claim for personal injuries. In general, a property owner owes no duty to remedy natural accumulations of snow or ice. (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1004, 799 N.E.2d 80.) However, if the property owner voluntarily attempts to remedy or remove a natural accumulation of snow or ice, then the property owner must exercise due care in accomplishing that task. (*Sims v. Block* (1968), 94 Ill. App. 2d 215, 222, 236 N.E.2d 572.) It must be noted that no evidence has been presented that the "ice" upon which the Claimant fell was

the result of a defect in the sidewalk or any unnatural accumulation, so that issue will not be considered by this report.

In this matter, any dispute as to whether the State voluntarily undertook efforts to remove the natural accumulation of ice, snow and/or rain on its property, thereby creating a duty and obligating itself to act with ordinary care in said removal, is rendered moot by the State's admission in its brief that it did, in fact, do so. As such, the next issue to be addressed is whether said removal or attempt to remove fell below the standard of ordinary care. See generally, *Richard Sheild v. State* (1994), 47 Ill. Ct. Cl. 313, 317.

Claimant testified that there was salt spread in the area where she fell, but apparently argues there was not *enough* salt spread in that area to make it reasonably safe for a person such as Claimant to walk. Succinctly, Claimant argues that the State's actions of not spreading "enough" salt in the area where she slipped on a naturally accumulated icy condition, fell below the standard of ordinary care for removal of that natural accumulation.

Claimant's reply brief admits that the "State's maintenance workers did *adequately* salt the illuminated stairway adjacent to its building" but then argues "the State's workers were negligent in the manner in which they woefully salted the sidewalk areas." At no point does the Claimant quantify the amount of salt which would be enough to make an area safe or why additional salt would have made the area safe for the Claimant to traverse.

Claimant fails to present *any* evidence as to the "manner" in which the State "woefully salted" the area in which she fell, other than her testimony that there appeared to be less salt on the sidewalk area than on the

stairway area. In theory, the Claimant could have presented evidence that salt spread by hand by one person, by hand by two persons or without the assistance of a mechanical "spreader" was below the standard of ordinary care, but she utterly failed to do so.

In addition, the Claimant fails to fully describe the area where she fell, and specifically, the "ice" which caused her to fall. How big was the area or piece of ice? Would additional salt on the area have completely melted the ice and prevented her fall?

Claimant asserts that "had the State's employee used all of the salt in his bucket on the sidewalk area, then this incident would probably not have occurred," yet she fails to provide any substantive basis for this argument. It is not this Court's duty to assume evidence and speculate beyond the evidence and testimony presented by the Claimant. In that regard, there are too many questions left unanswered by the evidence (or lack thereof) presented by the Claimant.

As such, Claimant has failed to carry her burden of proving the State failed to exercise ordinary care in not applying "enough" salt to the area where she fell and allegedly injured herself. Based on the evidence presented, the Claimant's fall due to natural accumulation of ice on a sidewalk, while obviously unfortunate, was not the result of the State's failure to exercise ordinary care.

For the aforesaid reasons, Ann Naughton's claim is denied.