(Nos. 86-CC-0929, 87-CC-1318, 89-CC-3279 cons.—

A & H PLUMBING AND HEATING CO., F.E. MORAN, INC., and THORLIEF LARSEN & SON, INC., Claimants, v. THE STATE OF ILLINOIS, Respondent.

*Order filed June 8, 1990.*

McNELLA & GRIFFIN (MARSHA MARAS, of counsel), for Claimant A & H Plumbing and Heating Co.

PASQUESI, CENGEL & PASQUESI, P.C. (THOMAS A. PASQUESI, of counsel), for Claimant F.E. Moran, Inc.

QUERREY & HARROW, LTD. (PAUL T. LIVELY, of counsel), for Claimant Thorlief Larsen & Son, Inc.

NEIL F. HARTIGAN, Attorney General (ERIN O'Connell, Assistant Attorney General, of counsel), for Respondent.

MONTANA, C.J.

Claimants A & H Plumbing and Heating Company, Inc., F. E. Moran, Inc., and Thorlief Larsen & Son, Inc., brought these claims seeking compensation for construction work done for the Respondent's Capital Development Board (hereinafter referred to as the CDB) on Project 810-072-001, the Oakton Community College.

A & H Plumbing and Heating Company, Inc., filed its claim on October 25, 1985. In relevant part, it alleged in its verified complaint the following:

1. On or about September 9, 1977, it was awarded a contract by the Capital Development Board (CDB) to perform certain plumbing work at

Oakton Community College, Phase I. A copy of said contract awarding such work is attached hereto and incorporated herein by reference as Exhibit 1.

2. Pursuant to the contract, the original contract price was $698,650.00 for the work to be performed thereunder, but during the course of construction, additions were made increasing the amount of the contract price by an additional $18,678.92 and deductions were made in the amount of $3,756.88 resulting in an adjusted contract price of $713,572.04.

3. The CDB has made payments to A & H in the amount of $675,942.91 leaving an unpaid contract balance due A & H of $37,629.13 after allowing all credits and deductions.

4. A & H has performed all work and all conditions precedent required of it under its contract with the CDB and the aforesaid $37,629.13 is now due and owing to A & H by the CDB.

5. A & H has not assigned or transferred this claim for said unpaid contract balances and is the true owner of the claim now brought against the CDB.

6. Although often demanded, the CDB has failed and refused to pay any portion of the contract balance currently owed to A & H.

F.E. Moran, Inc., filed its claim on December 10, 1986, seeking $30,997.01. In relevant part, F.E. Moran, Inc., alleged in its verified complaint the following:

1. Moran is an Illinois corporation with offices at 2265 Carlson Drive, Northbrook, Illinois.

2. On or about September 9, 1977, Moran and CDB entered into a contract wherein Moran was to furnish certain ventilation and air distribution work at Oakton Community College for which Moran was to be paid the sum of $863,600 (attached and incorporated herein is a copy of said contract).

3. From time to time during the performance of Moran's duties certain changes in the contract were agreed to by the parties. The total agreed-upon contract price including the agreed-to changes was $893,889.53.

4. Moran has fully and completely performed all of the work agreed to and all of its responsibilities under the contract.

5. CDB has paid Moran $862,892.52.

6. After demand, CDB has refused to pay the remaining unpaid balance of $30,997.01.

Thorlief Larsen & Son, Inc., filed its claim on April 20, 1989, seeking $536,469.63. Thorlief Larsen & Son, Inc., filed a standard lapsed appropriation form complaint alleging that it made demand for payment to

the CDB but the demand was refused on the grounds that the funds appropriated for the payment have lapsed. Incorporated in and attached to the form complaint was another complaint wherein the Claimant further explained the nature of the claim. In relevant part, the Claimant made the following verified allegations:

1. This claim is for breach of contract and recovery is sought under section 8(b) of the Court of Claims Act. (Ill. Rev. Stat., ch. 37, par. 493.8(b).)

2. Claimant is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located in Itasca, Illinois. The Respondent is an agency created by the State of Illinois.

3. As of September 9, 1977, Claimant and Respondent entered into a written contract for the construction of the project described as "General Work Oakton Community College Phase I." A true and correct copy of the contract is attached hereto and made a part hereof as Exhibit 1.

4. The contract provides that Claimant is to be paid a base contract price of $5,361,780 subject to adjustment for change order additions and deletions and for fees on change order work of assigned contractors.

5. During the course of Claimant's work on the project, the contract price was adjusted by change order word by a net increased amount of $409,817.59. Of that amount, $370,492.24 represents change orders which have been processed by Respondent and $39,415.35 represents change orders which have not yet been processed by Respondent.

6. In addition, Claimant has earned $4,486.97 in fees on the change order work of contractors assigned to it under the contract.

7. Based upon the foregoing adjustments, the adjusted contract price is $5,776,084.56. To date Claimant has been paid $5,229,735.50 leaving due and unpaid $546,349.06.

8. Claimant has previously submitted on February 2, 1989, and then again on March 13, 1989, to the Respondent to the attention first, of Robert Pierce and then of Bruce Boncyzk a request for payment of the $546,349.06. On April 3, 1989, Respondent denied the request because of lapsed appropriations.

9. Respondent's failure to act and failure to pay the $536,469.63 constitutes a breach of the contract.

10. Claimant has satisfactorily performed its obligations under the contract, or in the alternative, is excused from strict performance.

11. Claimant is the owner of the claim asserted herein by virtue of being a party to the contract.

12. Claimant has made no assignment or transfer of the claim.

13. Claimant is justly entitled to the amount claimed herein after allowing Respondent all just credits.

14. Claimant believes the facts alleged in this complaint to be true.

15. Neither this claim nor any claim arising out of the contract has been previously presented to any person, corporation or tribunal other than the State of Illinois except that Claimant is alleging that, to the extent the contract balance is not paid by Respondent, it is entitled to a set-off in the case entitled *Board of Trustees of Community College District No. 535 v. Perkins & Will Architects, Inc.*, docketed in the circuit court of Cook County, Illinois, as No. 82 L 3456. No credits on account of the allegation of set-off have yet been realized.

Attached to this complaint were various letters and documents supporting the allegations.

On April 27, 1990, the parties to the A & H Plumbing and Heating Company, Inc., claim filed a joint stipulation which in pertinent part states as follows:

1. The claim was brought for services provided for the Claimant for work on Oakton Community College. Capital Development Board project No. 810-072-001, CDB contract No. 8-1131-42. Claimant herein is seeking $37,629.13 based on work done pursuant to said contract.

2. The services for which this claim is made were performed to the specifications and satisfaction of the Capital Development Board.

3. The project funds and contingency funds for Oakton Community College Capital Development Board Project No. 810-072-001 have been depleted. No additional money is available for payment of this claim.

4. The Respondent agrees that had the Oakton Community College, Capital Development Board Project No. 810-072-001 not been depleted, the Capital Development Board would have paid the Claimant, A & H Plumbing and Heating Co., Inc., $37,629.13.

Wherefore, the parties respectfully move this Court to enter an order dismissing the claim herein.

On May 16, 1990, the parties to the F. E. Moran, Inc., claim filed a joint stipulation which in pertinent part states as follows:

1. That this claim was brought for certain ventilation and air distribution work performed by Claimant on Phase I of the Oakton Community College, CDB Project No. 810-072-001, CDB Contract No. 8-1133-44.

2. That the services for which this claim is made were performed to the specifications and satisfaction of the Capital Development Board.

3. That the project funds and contingency funds for Phase I of the Oakton Community College, Capital Development Board Project No. 810-072-001 have been depleted. No additional money if available for payment of this claim.

4. The Respondent agrees that had the Oakton Community College, Capital Development Board Project No. 810-072-001 funds not been depleted the Capital Development Board would have paid the Claimant, F. E. Moran, Inc. $30,997.01.

Wherefore, the Respondent respectfully moves this court to enter an order dismissing the claim herein without prejudice.

Less than a week later, on May 21, 1990, the parties to the Thorlief Larsen & Son, Inc., claim filed a joint stipulation which in pertinent part states as follows:

1. This proceeding was commenced by the filing of a complaint for recovery of a lapsed appropriation, pursuant to section 790.50(d) of this Court's rules, in the amount of $546,349.06. The amount was incorrectly stated on the face of the Complaint as $536,469.63. The correct amount is particularized on Exhibit 2 to the Complaint, and the parties further stipulate that the complaint is amended on its face to read $546,349.06 instead of $536,469.63.

2. The appropriation lapsed as of September 30, 1985, for Capital Development Board (CDB) Project No. 810-072-001, CDB Contract No. 8-1130-41 by and between the Claimant and the CDB (the Contract). The Contract is for the construction of the project described as General Work, Oakton Community College Phase I (the Project).

3. The appropriation lapsed because the Project User, the Oakton Community College, filed a suit in the circuit court of Cook County, Illinois, against the CDB's architect, its various prime contractors, including Claimant, and the prime contractors' sureties for the Project. This suit is entitled *Board of Trustees of Community College District No. 535 v. Perkins & Will Architects, Inc.*, and is docketed as No. 82 L 3456 (the User Suit). The User Suit alleged various design and construction deficiencies against the defendants. As a result of the User Suit, Respondent stopped making payments to Claimant and the appropriation for the Project subsequently lapsed on September 30, 1985.

4. After protracted negotiations between the User and the defendants, the User Suit was settled. A copy of the settlement agreement between the User and the Claimant was delivered to the CDB, and as a consequence of the settlement, the CDB has released any and all claims it might have against the Claimant arising out of the construction of the Project. On February 21, 1990, the User Suit was dismissed with prejudice.

5. Based upon the settlement and dismissal of the User Suit, Claimant is entitled to be paid the contract balance due under the Contract.

6. The Claimant's claimed Contract balance of $546,349.06 consists of

three components: base contract amount, change orders to the base contract amount for extra work to the Contract which the CDB acknowledges was authorized but which has not yet been approved for payment by the CDB because of the filing of the User Suit ("Authorized Extra Work"), and change orders to the base contract amount for extra work to the Contract which Claimant contends was requested by the CDB but which the CDB has not yet approved or disapproved because of the filing of the User Suit (Undetermined Extra Work).

7. The CDB agrees that it will process for payment the Authorized Extra Work and will promptly review and consider for approval the Undetermined Extra Work.

8. The CDB asserts that Change Order No. 61 to the Contract is a proper change order; however, Claimant disputes that assertion.

9. With respect to the Undetermined Extra Work and Change Order No. 61 described in the foregoing Paragraphs 7 and 8, the parties further stipulate and agree that to the extent those matters cannot be resolved by the parties, Claimant shall file a separate action for recovery in the Court (the Separate Action). Respondent acknowledges that the Separate Action will be timely filed.

10. For purposes of this action, the CDB acknowledges and agrees that not less than $517,251.02 is due Claimant as follows:

| | |
|---|---:|
| Original Contract Amount | $5,361,780.00 |
| Plus Change Order Additions | 381,904.24 |
| | $5,743,684.24 |
| Minus Change Order Deductions | ( 28,356.26) |
| | $5,715,327.98 |
| Plus RFP's not processed | 56,284.97 |
| | $5,771,612.95 |
| Minus RFP's not processed | 14,747.00 |
| Net Contract Amount | $5,756,865.95 |
| Less Payments | 5,239,614.93 |
| Net Contract Balance | $ 517,251.02 |

11. The amount of the lapsed appropriation is $475,713.05 for which Respondent further stipulates and agrees judgment should be entered in favor of Claimant with the balance of $41,537.97 to be the subject of Claimant's Separate Action.

12. Allowing the entry of judgment now in this action in the amount of the lapsed appropriation of $475,713.05 will give the CDB the additional time needed to approve for payment the Authorized Extra Work, to evaluate the Undetermined Extra Work, and to combine the results of the approval and evaluation with the Admitted Balance as the subject matter of Claimant's Separate Action.

13. In addition, allowing the entry of judgment now in this action will satisfy the Project User's request that funds be released to facilitate the implementation of the settlement reached by the User with Claimant. The User has represented to the CDB that it seeks prompt resolution of this action so that Claimant can perform certain remedial work at the Project in the coming summer months "so as to avoid undue disruption and hazard to [the User's] students and staff."

14. There are presently pending in the circuit court of Cook County, Illinois, in a consolidated proceeding (the Lien Action) the following lien claims against public funds filed by certain subcontractors of Claimant pursuant to Ill. Rev. Stat., ch. 82, par. 23 (the Mechanic's Lien Act):

| | |
|---|---|
| Engineered Erection Company | $ 27,935.00 |
| Du-Al Floor Company, Inc. | $ 10,054.00 |
| Kleich & Galanis Kontractors, Inc. | $250,782.00 |

15. Claimant has represented to the CDB that it believes it will be able to deliver to the CDB within approximately 30 days certified copies of Court orders dismissing the above mechanic's lien claims in the Lien Action.

16. To the extent that Claimant cannot provide such Court orders, the proceeds of any judgment entered on the basis of this joint stipulation shall be paid into the Clerk of the Court hearing the Lien Action for further distribution pursuant to section 23(a) of the Mechanic's Lien Act.

17. In the interest of reducing the time and expense of trial and in recognition of Claimant's right to payment, Respondent consents to the entry of judgment in favor of Claimant and against Respondent in the amount of $475,713.05, it being understood and agreed that Claimant hereby reserves the right to pursue the balance of its claim by the separate action in this Court.

This Court is not bound by such stipulations and, based on the record before us, we cannot wholly acquiesce in approving these now before us. The entire record in each case consists primarily of the complaint and stipulation. (Some discovery is on file in the A & H Plumbing and Heating Company, Inc., case.) Based on our reading of the stipulations, we find that all three Claimants are vying for the same lapsed funds and that an insufficient amount of money lapsed to satisfy *in toto* all of the claims. In such circumstances, it is the Court's policy to make awards on a FIFO basis. (*Aurora College v. State* (1985), 37 Ill. Ct. Cl. 321.) Claimant A & H Plumbing and Heating Company, Inc., filed its claim first. For that reason we will deny the parties' request to

dismiss and, based on the stipulation, grant an award in that case in the amount of $37,629.13.

Claimant F.E. Moran, Inc., filed its claim next. We will therefore deny the Respondent's request for dismissal of that claim and, based on the stipulation, we will grant an award in that case in the amount of $30,997.01.

The claim by Thorlief Larsen & Son, Inc., presents different issues. First, at paragraph 10 the CDB acknowledged that not less than $517,251.02 was due the Claimant. At paragraph 11 the CDB agreed that an award in the lesser amount of $475,713.05 should be made. That lesser sum is the amount which lapsed. The difference between the two amounts is $41,537.97. This difference was said at paragraph 11 to be the subject of a "separate action" to possibly be brought by the Claimant. Yet at paragraph 9 the possible "separate action" was described as involving matters the parties may not be able to resolve. Thus there is an ambiguity in that on the one hand the parties stated that the matter would be reserved because they may not be able to resolve the dispute and on the other hand the CDB agreed that the money was due. Regardless, this Court could not award the $41,537.97 because it is clear that it did not lapse. Rather than allow the filing of a separate action for that balance, we will keep this case open and retain jurisdiction. The parties may take whatever action they deem necessary following the entry of this order.

After subtracting the amounts we will award to A & H Plumbing and Heating Company, Inc., and to F.E. Moran, Inc., the lapsed balance left for the Thorlief Larsen & Son, Inc., claim is $407,086.91. Based on the record before us, we will award that sum.

Due to the amounts of the awards and to the fact that CDB bond money is involved (appropriation number 141-51184-4473-0376) funding of the awards will entail legislative approval. In brief, the usual and customary process involves inclusion of the awards in what is commonly referred to as the Court of Claims Special Awards Bill. The Special Awards Bill contains the awards made by the Court which it is unable to pay directly. Each award is separately set forth in the bill and the bill provides for appropriating monies to the Court for the payment of the awards. Conditional upon approval of the bill by the General Assembly and the Governor, the Clerk's Office then causes a voucher to be sent to the Comptroller for generation of a warrant made payable to the Claimant in satisfaction of the judgment. The existence of the liens in the Thorlief Larsen & Son, Inc., claim presents an issue not regularly faced by this Court. As of the date this order is filed, the Claimant has not produced and filed with the Court certified copies of Court orders dismissing the lien actions. Provision for reservation of a portion of the award must be made for the possibility that the liens will continue to exist during and after the appropriations process. For that reason, the General Assembly, Governor, and Comptroller are advised that the proceeds of any appropriation made to fund the judgment entered in the Thorlief Larsen & Son, Inc., claim will not necessarily be dispersed directly to the Claimant. Portion of any appropriation may be directed to the appropriate circuit court or the lienholders by a later order from this Court. The Court of Claims urges those involved in the process of paying the judgment in the Thorlief Larsen & Son, Inc., claim to acquiesce in this somewhat irregular procedure in recognition of the CDB's statements at paragraphs 12, 13, and 17 of the

joint stipulation. The award may be reduced depending on the existence of other claims made against the lapsed funds involved herein.

It is hereby ordered that:

1. Claimant F.E. Moran, Inc., be, and hereby is, awarded the sum of $30,997.01 in full and final satisfaction of its claim, No. 87-CC-1318;

2. Claimant A & H Plumbing and Heating Company, Inc., be, and hereby is, awarded the sum of $37,629.13 in full and final satisfaction of its claim, No. 86-CC-0929.

3. An award in the sum of $407,086.91 be, and hereby is, made in the claim of Thorlief Larsen & Son, Inc., No. 89-CC-3279, payment of which is not to be made until further order of this Court;

4. The Court will retain jurisdiction over Claim No. 89-CC-3279 for purposes of ordering how the proceeds of any funds appropriated for the award therein will be disbursed and to hear and determine whatever issues remain unresolved by this order including, but not limited to, what the parties referred to in their joint stipulation as "the Separate Action." Payment of the award in claim No. 89-CC-3279 will not be withheld pending final resolution of all issues therein, but shall be made as soon as reasonably practicable.

5. The Respondent is to advise the Court within 30 days of any other claims arising out of the project.